IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NELSON VELEZ MARTINEZ; VICTOR NAVAS MIERES; ANDRES GONZALEZ LEON<br><br>Plaintiffs<br><br>vs<br><br>NB TEAM CONSULTING, INC.; SASHA NUÑEZ; DARWIN PALACIOS<br><br>Defendants | CIVIL 17-1404CCC |

**OPINION AND ORDER**

This case involves a dispute between the shareholders of N&B Team Consulting Caribbean Corporation ("N&B TCC"), a domestic corporation. Plaintiffs Nelson Vélez Martínez ("Vélez"), Andrés González León ("González León"), and Víctor Navas Mieres ("Navas"), residents of Puerto Rico, are suing Sasha Núñez ("Núñez"), Darwind Palacios ("Palacios"), and their company NB Team Consulting Inc. ("NB Consulting"), residents of Florida. Before the Court are a Motion to Dismiss for Failure to Join Necessary and Indispensable Party and for Failure to Arbitrate (**d.e. 7**) filed on July 20, 2017 and the Response in Opposition (d.e. 15) filed on September 8, 2017. For the reasons set forth below, defendants' motion is DENIED.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are former employees of SAP SE, a corporation specializing in business software applications.  With the expertise and commercial contacts which they acquired throughout their career at SAP SE, they decided to start their own company to provide business software logistics services in English-speaking countries of the Caribbean.  Defendants knew plaintiffs through previous engagements between SAP and their company NB Consulting.  Sometime before or in the beginning of 2013, defendant Núñez approached plaintiff Vélez and asked for his new company to work with NB Consulting to increase its sales in the Caribbean.  Cognizant of the potentiality of this business relationship, Vélez invited co-plaintiff Navas to join him in creating a new company with the defendants, owners of NB Consulting. In early 2013, together with Núñez and Palacios, they established N&B TCC to sell and provide licenses and services to NB Consulting's clients in English speaking Caribbean countries.

The four met on February 5, 2013, signed N&B TCC's Articles of Incorporation, and distributed the shares equally between them; 120 shares in total, each receiving 30 shares.  Plaintiffs would provide its business opportunities in the English speaking Caribbean while defendants would contribute their business leads and potential opportunities since 2012 in Puerto Rico and the Dominican Republic, along with financing and part of their

company NB Consulting's workforce. Plaintiffs aver that the parties envisioned N&B TCC becoming a subsidiary of NB Consulting. During this meeting, the parties agreed that all commercial transactions for N&B TCC would require either Vélez or Navas' signature, a 'Type A' signee, and either Núñez or Palacios' signature, a 'Type B' signee. Once N&B TCC was incorporated, plaintiffs allege that they started pursing potential clients.

On September 9, 2013, the parties held a shareholders meeting where plaintiffs allege González León was added as a member. The new stockholder distribution involved increasing the total shares to 150, with each receiving 30 shares. Plaintiffs claim that in this meeting González León was added as a 'Type A' signee and that it was agreed that any financial transaction required the approval of all five shareholders. As a result of these agreements, plaintiffs disclosed to defendants their business contacts, potential customers, strategies, and alliances.

Plaintiffs claim that in the process of closing one of N&B TCC's business transactions, González discovered that defendant Núñez falsified plaintiffs' signatures and authorized the deal, without the consent of the other shareholders. Plaintiffs also accuse defendants of cancelling González León's email access to keep him unaware of ongoing negotiations with a client that plaintiffs provided to N&B TCC. They aver that defendants deviated this and similar transactions with other clients, excluding them from negotiations

with entities which they referred to N&B TCC by closing their email accounts and by appropriating the exclusive information contained therein. Plaintiffs surmise that defendants withheld their share of the profits produced by the transactions with clients which they contributed thereby violating the agreements reached upon incorporating N&B TCC.

Defendants seek dismissal of the complaint for failure to join N&B TCC, claimed to be a necessary and indispensable party under Fed. R. Civ. P. 19 and for failure to arbitrate. Plaintiffs counter with the argument that their claims against defendant stockholders do not require joinder of N&B TCC.

**II.   LEGAL STANDARD**

When considering a motion to dismiss for failure to join a party under Fed. R. Civ. Pro. 12(b)(7), the Court conducts a two-step analysis. *See U.S.A. v. San Juan Bay Marina*, 239 F.3d 400, 405 (1st Cir.2001). "First, the Court needs to determine 'whether a person fits the definition of those who should 'be joined if feasible' under Rule 19(a).' Once the Court determines that the person in question is a 'necessary person' according to Rule 19(a), it must ascertain whether the joinder of said party is feasible. If it is not 'feasible' to join, the Court must decide whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed pursuant to Rule 19(b).' 'When applying Rule 19(b), the court will ask whether it is so important, in terms of efficiency or fairness, to join this

person, that, in the person's absence, the suit should not go forward at all.'" *Alexandrino v. Jardin de Oro*, 573 F.Supp.2d 465 (D.P.R.2008)(citations omitted).

"If the threshold requirements of Rule 19(a) are not met, then a Rule 19(b) inquiry is unnecessary." *Montes-Santiago v. State Ins. Fund Corp.*, 600 F. Supp. 2d 339, 342 (D.P.R. 2009)(referring to *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990)).  Rule 19(a) compels joinder when the court "cannot accord complete relief among existing parties" in that person or entity's absence. Fed. R. Civ. Pro 19(a)(1)(A).

It is well known that subject matter jurisdiction is granted to federal courts by either "28 U.S.C. § 1331, which provides for '[f]ederal-question' jurisdiction, [or] § 1332, which provides for '[d]iversity of citizenship' jurisdiction."  *MB Auto Care Mgmt., Inc. v. Plaza Carolina Mall, L.P.*, 695 F.Supp. 2d 1,   2 (D.P.R. 2010)  (citing  *Arbaugh  v. Y & H Corp.*, 546 U.S. 500, 501, 126 S.Ct. 1235, 163 L.Ed. 2d 1097 (2006)).

"'[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.' Moreover, courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh*, 546 U.S.  at 514  (citing *United  States  v.  Cotton,*  535 U.S. 625, 630, 122 S.Ct. 1781,  152 L.Ed. 2d  860 (2002)); referring to *Ruhrgas AG v.*

*Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 1570, 143 L.Ed. 2d 760 (1999). "[S]ubject–matter delineations must be policed by the courts on their own initiative even at the highest level." *Id.* (referring to *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed. 2d 210 (1998)).

"As a matter of common practice, a district court confronted with a question of subject matter jurisdiction reviews a plaintiff's complaint not to judge the merits, but to determine whether the court has the authority to proceed. When conducting this inquiry, the court only asks whether the complaint, on its face, asserts a colorable federal claim." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 832 (1st Cir. 1997) (referring to *Aldinger v. Howard*, 427 U.S. 1, 7, 96 S.Ct. 2413, 2417, 49 L.Ed. 2d 276 (1976) (stating "where federal jurisdiction is properly based on a colorable federal claim, the court has the right to decide all the questions in the case .. . ."); *see also Northeast Erectors Assoc. v. Secretary of Labor*, 62 F.3d 37, 39 n. 1 (1st Cir. 1995) (observing that "federal question jurisdiction exists once the plaintiff has alleged even a colorable federal claim").

### III.   DISCUSSION

Defendants state that "[a]lthough the violation of certain federal laws are mentioned in the complaint, the sole reason for claiming jurisdiction in this

CIVIL 17-1404CCC                          - 7 -

matter is based on diversity, pursuant to 28 U.S.C. § 1332." d.e. 7, ¶ 2. Defendants' motion to dismiss for failure to join an indispensable party, specifically corporation N&B TCC, is aimed at defeating diversity jurisdiction invoked in the complaint as its principal jurisdictional foundation. *See* d.e. 1, ¶ 1.  All of the allegations of the complaint, except for the one violation of a federal statute at 18 U.S.C. § 1030 on "[f]raud and related activity in connection with computers" alleged at ¶¶ 28-43 of the complaint, have to do with breach of the contractual agreements that led to the incorporation of N&B TCC and to the N&B TCC shareholder meetings that followed.

An example of a breach of a contractual agreement is found in allegations 44-45 of the Complaint:

> All business transactions reached and closed in the English Speaking Caribbean were supposed to be made by NB Team Caribbean, and the monies resulting from such transaction divided equally between all five (5) shareholders… This contractual agreement was clearly breached by Defendants when they started making business with Plaintiff's commercial contacts without notice or compensation to Plaintiffs.

d.e. 1, ¶ 44-45.

This is a direct lawsuit filed by three stockholders against the other two claiming that the latter breached their contractual agreements with them.  It is not necessary to include the corporation in order to provide complete relief among existing parties.  There are no allegations of financial loss to the

corporation N&B TCC.  The corporation N&B TCC is neither a necessary nor an indispensable party to this lawsuit which is essentially based on imputations of breaches of contract made by one group of stockholders against the other.

The Court also notes that plaintiffs have asserted a claim arising under federal law.  Plaintiffs charge defendants with closing their email accounts in order to circumvent the agreements to share the earnings of transactions related to N&B TCC clients that plaintiffs contributed to the company.  *See* d.e. 1, ¶¶ 28-43.  They assert that these acts violate 18 U.S.C. § 1030, which prohibits fraud in connection with computers.  Section 1030(g) enables "any person who suffers damage or loss by reason of a violation of this section [to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."  *See also Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*, 203 F.Supp. 3d 221, 230 (D.P.R. 2016).  Plaintiffs seek "contractual damages, general damages, and damages resulting from the violation of 18 U.S.C. § 1030 and all of the monies obtained and produced by [their] clients, plus damages and interests." d.e. 1, ¶ 54.

Defendants' argument that the complaint should be dismissed for failure to arbitrate is equally unavailing.  *See* d.e. 7, pp. 7-9.  **The Court agrees with plaintiffs that Section 6, Article 10 in the Articles of Incorporation**

**referring to adjudication by an arbitrator applies to disputes in the administration of N&B TCC as a company, not to breaches of contract or claims of fraud like those asserted in their complaint**.   See d.e. 11-1, p. 6, Article 10, Section 1; *Id.* at p. 7.   Plaintiffs have no obligation to arbitrate these claims under the Federal Arbitration Act since they fall outside the scope of Article 10, Section 6.   *See Colon v. AT & T Mobility Puerto Rico, Inc.*, 261 F.Supp. 3d 251, 256 (D.P.R. 2017); *Crespo v. Matco Tools Corp.*, 274 F.Supp. 3d 15, 21 (D.P.R. 2017) (finding a requirement to arbitrate breach of contract claims where they were within the scope of a valid arbitration agreement).

For the reasons stated, the Motion to Dismiss for Failure to Join a Necessary and Indispensable Party Under Rule 19(a), Fed. R. Civ. P., and for Failure to Arbitrate (**d.e. 7**) is DENIED.

SO ORDERED.

At San Juan, Puerto Rico, on March 28, 2018.


S/CARMEN CONSUELO CEREZO
United States District Judge